# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SUZANNE E. FORSBERG, et al.,<br><br>Defendants. | No. 2:14-cv-1559-WBS-EFB<br><br>FINDINGS AND RECOMMENDATIONS |

This case was before the court on July 1, 2015, for hearing on plaintiff's motion for entry of default judgment against defendants Suzanne Forsberg, individually and dba Rooster Juice Grill and Sports Bar, and Cardinal Puffs, LLC.[1] ECF No. 20. Attorney Gary Decker appeared on behalf of plaintiff; no appearance was made on behalf of defendants. At the hearing, the court notified plaintiff's counsel that Cardinal Puffs was not properly served with a copy of the summons and complaint. The court subsequently granted plaintiff's motion for an extension of time to effect service on Cardinal Puffs. ECF No. 25. Plaintiff has since served Cardinal Puffs (ECF No. 26), and filed a new motion for default judgment against that defendant, which was before the court for hearing on November 4, 2015 (ECF No. 31). For the reasons stated below,

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19). *See* 28 U.S.C. § 636(b)(1).

1

and as stated on the record at July 1 and November 4 hearings, the court recommends that plaintiff's applications for entry of default judgment be granted in part.

I.   Background

Plaintiff, a Pennsylvania corporation, is a closed-circuit distributor of pay-per-view prizefight events. Compl. ¶ 6, ECF No. 1; Affidavit of Joe Hand, Jr. ("Hand Aff.") ¶ 4, ECF No. 22.[2] Pursuant to a contract, plaintiff acquired exclusive nationwide commercial exhibition licensing rights to a television program entitled "'Ultimate Fighting Championship 162: Chris Weidman v. Anderson Silva," with a broadcast date of Saturday, July 6, 2013 (the "Program").[3] Compl. ¶ 21; Hand Aff. ¶¶ 3, 5. Plaintiff subsequently entered into sublicensing agreements with various commercial entities throughout North America, including entities within California, through which it granted limited rights to publicly exhibit the Program within their respective commercial establishments (e.g., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.). Compl. ¶ 22; Hand Aff. ¶ 5. Plaintiff made transmission of the Program available to commercial establishments that paid plaintiff a commercial sublicense fee to broadcast the Program. Hand Aff. ¶ 8. For example, to exhibit the Program in a commercial establishment that had a fire code occupancy of 50 persons, the commercial sublicense fee would have been $750. Hand Aff. ¶ 8 & Ex. 2.

Defendant Suzanne E. Forsberg is a managing member of defendant Cardinal Puffs, LLC, which owns and operates the commercial establishment Rooster Juice Grill and Sports Bar, located at 1325 W. Yosemite Avenue, Manteca, California. Compl. ¶ 9. Defendants did not obtain a license to exhibit the Program from plaintiff. Compl. ¶ 24; Aff. ¶ 9. On July 6, 2013, plaintiff's investigator, Christopher Paez, entered the Rooster Juice Grill and Sports Bar, after paying a $10 cover charge, and observed the unauthorized broadcast of a portion of the Program

---

[2] The moving papers submitted with plaintiff's September 25, 2015 motion for default judgment against Cardinal Puffs are essentially identical to the documents submitted in support of the initial motion for default judgment. *Compare* ECF No. 20, 21 *with* ECF No. 31. For ease of reference, the court cites only to the documents submitted with the initial motion.

[3] The Program included "all under-card bouts and fight commentary encompassed in the television broadcast of the event . . . ." Compl. ¶ 21.

1  on five televisions. ECF No. 20-3. While at the establishment Mr. Paez took three head counts,
2  which revealed the total number of patrons to be 56. *Id.*
3       On July 1, 2014, plaintiff filed this action alleging that defendants unlawfully intercepted
4  and intentionally broadcast the Program at Rooster Juice Grill and Sports Bar for the purpose of
5  direct or indirect commercial advantage or private financial gain.[4] *See generally* Compl. Plaintiff
6  alleges four claims for relief, which are labeled as "Counts" in the complaint. Plaintiff's first
7  claim for relief alleges that defendants engaged in the unauthorized publication or use of
8  communications in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 605 *et*
9  *seq*. Compl. ¶¶ 20-29. Its second claim alleges that defendants engaged in the unauthorized
10 interception, reception, publication, divulgence, display, and/or exhibition of the Program in
11 violation of 47 U.S.C. §§ 553 *et seq*. *Id.* ¶¶ 30-34. Plaintiff's third claim alleges a common law
12 claim of conversion, *id*. ¶¶ 35-38, and its fourth claim alleges a violation of California Business
13 and Professions Code §§ 17200 *et seq*., *id*. ¶¶ 39-48.
14      According to the summons returned on February 12, 2014, plaintiff, through a process
15 server, attempted personal service on defendant Forsberg on January 26, 28, 29, and 30, 2015.
16 ECF Nos. 13, 14. The proof of service state that process was ultimately left with "MITCH
17 MANZANARES-CO-OCCUPANT" on January 30, 2015. *Id*. Plaintiff subsequently mailed a
18 copy of the summons, complaint, and related documents to defendant Forsberg. *Id*. Plaintiff
19 /////
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////

---

[4] In addition to asserting claims against Suzanne Forsberg and Cardinal Puffs, LLC, the complaint alleges claims against Robert Forsberg. ECF No. 1. However, on February 18, 2015, plaintiff voluntarily dismissed its claims against Robert Forsberg. ECF No. 15.

served Jessica Granera, Cardinal Puffs's agent for service of process, on August 11, 2015.[5]  ECF No. 26.

On April 8, 2015, plaintiff requested the clerk to enter defendants' default, ECF No. 16, which was entered the following day.  ECF No. 18.  The clerk re-entered Cardinal Puffs's default on September 3, 2015.  ECF No. 28.  Plaintiff thereafter presented the instant motions for default judgment against both defendants.  ECF Nos. 20, 31.  The applications seek judgment on plaintiff's claims for violation of 47 U.S.C. § 605 and for common law conversion.[6]

II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  *See* Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,

---

[5]  It was unclear from the evidence submitted with plaintiff's September 25, 2015 motion whether Jessica Granera was authorized to accept service on behalf of Cardinal Puffs.  The California Secretary of State's website lists Legalzoom.com as the agent for service of process, and there was no indication Ms. Granera had any relation with Legalzoom.com.  Accordingly, the court directed plaintiff to submit further briefing addressing, among other things, whether Jessica Granera was authorized to accept service.  Evidence submitted with plaintiff's supplemental brief demonstrates that Jessica Graner was employed by Legalzoom.com and authorized to accept service of process.  Decl. of Thomas Riley, ECF No. 34-2 at Ex. A; Declaration of James Figueroa, ECF No. 34-3 ¶¶ 3-4.  Accordingly, the court finds that Cardinal Puffs was properly served.

[6]  Neither application specifically requests judgment on plaintiff's claims under 47 U.S.C. § 553 or California Business and Professions Code §§ 17200 *et seq*.  In its supplemental brief, plaintiff requests that court dismiss the section 533 and unfair competition claim should the motions for default judgment be granted.  ECF No. 34 at 3-4.  Accordingly, it is recommended that plaintiff's claims brought under 47 U.S.C. § 553 and California Business and Professions Code §§ 17200 *et seq.* be dismissed without prejudice.

> (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

III.   Discussion

    A.   Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1. Factor 1: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of a default judgment.

/////

/////

/////

5

1                2.        Factors Two and Three: The Merits of Plaintiff's Substantive Claims and
2                          the Sufficiency of the Complaint

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

The Federal Communications Act prohibits, among other things, "the unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another not entitled thereto." *DirectTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (internal quotations omitted). In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The U.S. Court of Appeals for the Ninth Circuit has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). *DirectTV, Inc.*, 545 F.3d at 844.

Although the complaint does not alleged whether the transmission that defendants intercepted was intercepted through a cable system or a satellite television signal, plaintiff seeks a default judgment only on its claim brought pursuant to 47 U.S.C. § 605.[7] While courts have been

---

[7] Transmissions intercepted from a cable system are expressly covered by 47 U.S.C. § 553(a), which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communication service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Here, information concerning whether the transmission was intercepted through a cable system or a satellite would be in defendants' possession. As defendants have failed to

divided on when § 605 applies versus § 553 in cases involving both satellite signals and cable signals, this court need not resolve the split of authority because, based on defendants' default, they have admitted that they pirated the Program in violation of § 605, and plaintiff does not seek damages under § 553. *See J & J Sports Prods., Inc. v. Juarez*, 2011 WL 221634, at *3 (E.D. Cal. Jan. 21, 2011). The court agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendants' failure to appear or defend in this action, plaintiff should not suffer the resulting prejudice. In any event, the split of authority has little practical impact in this case because the court recommends the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II). Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the *Eitel* factors are concerned, the complaint and record before the court favor entry of a default judgment.[8]

        3.        Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a significant amount of damages, i.e., $110,750. However, plaintiff's request for statutory damages and damages for conversion are tailored to defendant's specific wrongful conduct. Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages, the statutes involved contemplate such an award under certain circumstances. Under these circumstances, the court concludes that this factor favors the entry of a default judgment.

/////

---

appear, such information is unavailable to plaintiff.

[8] The court does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion. As discussed below, the court need not reach the conversion claim because the recommended statutory damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

7

4.      Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

5.      Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record, the court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. As indicated above, the record demonstrates that the defendants were properly served with a copy of the summons and complaint. Moreover, plaintiff served defendants by mail with its applications for default judgment and supporting papers. *See* ECF No. 20 at 4, 23; ECF No. 31 at 4; ECF No. 34 at 5. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have not appeared in this action. Thus, the record suggests that defendants have chosen not to defend and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

6.      Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, although the court is cognizant of the policy in favor of decisions

8

on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of a default judgment.

Upon consideration of the *Eitel* factors, the court concludes that plaintiff is entitled to a judgment by default against defendants and recommends the same.  What remains is the determination of the amount of damages to which plaintiff is entitled.

B. Terms of the Judgment to Be Entered

After determining that a party is entitled to a default judgment, the court must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the court concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendants' unlawful interception and broadcast of the Program, and recommends the same.

Pursuant to § 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for a violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. §§ 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

Here, plaintiff seeks a judgment in the amount of $110,750.  ECF No. 20-2 at 2. Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $750 as compensatory damages arising from defendant's alleged act of conversion.  *Id*.

Plaintiff's investigator's affidavit provides the Rooster Juice Grill and Sports Bar's capacity is approximately 50, and that there were around 56 patrons at the establishment on the night in question.  ECF No. 20-3 at 2-3.  The affidavit further states that the establishment was unlawfully broadcasting the Program on five televisions.  *Id*. at 2.  Although plaintiff's investigator was charged a $10 fee to enter the establishment, there is no evidence that defendants prepared any special advertising for the broadcast of the Program, that the establishment had increased business as a result of the broadcast, or that defendants are repeat offender with respect to intercepting transmissions of the type at issue here.  Balancing these facts with the widespread

9

problem of piracy and the need for an award sufficient to deter future piracy, the court recommends an award of statutory damages in the amount of $10,000. On the record before the court, the court does not find that this case merits an award of enhanced damages.

Plaintiff also seeks actual damages for defendants' alleged tortious act of conversion in the amount of $750, which consists of the fee that defendants would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense. The court does not recommend an award of damages with respect to plaintiff's claim for conversion. The statutory damages provisions at issue serve not only a deterrent function, *see J & J Sports Prods. v. Orellana*, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. *See* 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i). Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, it is recommended that plaintiff be awarded no damages on its conversion claim.

IV.   CONCLUSION

In view of the foregoing findings, it is hereby RECOMMENDED that:

1. Plaintiff's applications for default judgment (ECF Nos. 20, 31) be granted in part and denied in part;

2. The court enter judgment against defendants on plaintiff's claim brought pursuant to 47 U.S.C. § 605(a);

3. Statutory damages be awarded to plaintiff in the amount of $10,000.00;

4. Plaintiff's request for enhanced damages be denied;

5. Plaintiff's claims under 47 U.S.C. § 553 and California Business and Professions Code §§ 17200 *et seq*. be dismissed without prejudice; and

6. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 20, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE